PRISCO *v.* HUG.

*(Superior Court of New York City, General Term.* May 5, 1890.)

PLEADING AND PROOF—VARIANCE.

     In an action for money had and received by defendant for the use of one S., plaintiff's assignor, the answer alleged that defendant had received the money from a brother of S., with instructions to use it in defraying the expenses of S. in establishing himself in business in San Francisco, and not to pay it over until he was permanently so established, and that he returned the money because S. had abandoned the project. Defendant testified that his refusal to pay over the money was because he had been instrumental in helping S. obtain it from his brother for the purpose of establishing himself in San Francisco, and that, when S. decided to establish himself in New York, he believed it his duty not to pay over the money

until he had heard further from the brother. On cross-examination, he admitted that the true reason of his refusal was that he thereby intended to prevent S. from establishing himself in business in New York in competition with defendant. *Held,* that such defense was neither pleaded nor proved, and it was error to direct a verdict for defendant.

Appeal from trial term.

Action by Anthony Prisco against Herman Hug. The trial court directed a verdict for defendant, and from the judgment entered thereon plaintiff appeals.

Argued before SEDGWICK, C. J., and FREEDMAN and O'GORMAN, JJ.

*Samuel D. Sewards,* for appellant. *Gruber & Bard,* for respondent.

FREEDMAN, J. The action was brought by the plaintiff, as the assignee of one John F. Schipper, upon the allegation that the defendant, as agent of the said John F. Schipper, had received from one Gerhard Schipper a sum of money, of the value of $360, to the use of the said John F. Schipper, and upon due demand had refused to pay it over. The defendant, in his answer, denied this allegation, and then set forth that he received the money from Gerhard Schipper with instructions to expend it in the establishment in business of the said John F. Schipper in the city of San Francisco, and to pay it over to said John F. Schipper for that purpose whenever the latter should have proceeded to and become permanently located at said city, and not otherwise; that said John F. Schipper did not proceed to San Francisco, and abandoned his project of going there and establishing himself there, and notified and informed the said Gerhard Schipper to that effect; and that thereupon the said Gerhard Schipper notified and instructed the defendant not to pay the money to said John F. Schipper, but to return the same to him, the said Gerhard Schipper, and that thereupon, and before the commencement of the action, the defendant did return the money to said Gerhard Schipper, etc. The trial of the issues opened with an admission on the part of plaintiff's counsel that the payment of the money was a gift from Gerhard Schipper, in Bremen, to John F. Schipper; and plaintiff's assignor thereupon took the stand, and his testimony substantiated the allegations of the complaint. A motion made by the defendant, at this stage of the trial, for a dismissal of the complaint on the ground that no cause of action had been shown against the defendant, was denied. The defendant then took the stand as a witness on his own behalf, and the substance of his testimony was as follows: In the course of a conversation which, on or about August 6, 1886, the defendant had with plaintiff's assignor, the defendant suggested that plaintiff's assignor should go to San Francisco, establish himself in business there, and then should sell defendant's goods on commission. The defendant declined to advance any money for that purpose, and thereupon John F. Schipper, being of the opinion that his brother Gerhard Schipper, of Bremen, Germany, would let him have some, made a draft on his said brother for 1,500 reichsmarks, equal to $360, payable to the order of the defendant at five days' sight, and gave the draft to the defendant for collection. The defendant undertook to collect it, and to pay John F. Schipper the amount as soon as he (the defendant) should be advised by cable from the bankers in Germany to whom the draft was to be sent for presentation and collection that it was paid. The draft was sent, presented, and paid; and the defendant was advised of it by cablegram on or about August 24, 1886. Nevertheless the defendant subsequently refused to pay the money over to John F. Schipper when the latter demanded it. The ground of this refusal has been variably stated by the defendant. In his answer he took the position, as already shown, that he refused to pay because he had received the money from Gerhard Schipper with instructions to expend it only for establishing John F. Schipper in business in San Francisco, and because John F. Schipper had

changed his mind, and declined to go to San Francisco. But there is not a particle of evidence in the case to the effect that Gerhard Schipper gave any such instructions, or any instruction whatever, at the time he paid the draft. On this point there was a complete failure to establish the defense set up by answer. In the course of the trial the defendant took the position, and his testimony on his direct examination was to the effect, that he refused to pay because he had been instrumental in assisting John F. Schipper to obtain the money from his brother upon the representation that John F. Schipper intended to establish himself in business in San Francisco; that it was an enterprise promising good results, and that the money was necessary for that purpose; and that, when John F. Schipper changed his mind, and finally decided to establish himself in New York and not in San Francisco, he, the defendant, believed it to be his duty not to pay the money over before he had written to Gerhard Schipper, and heard from him again. In taking this position the defendant claimed that, when John F. Schipper applied to his brother for the money, he (the defendant) had sent a letter to Gerhard Schipper in which he (the defendant) had indorsed the application by the representation that John F. Schipper intended to go to San Francisco, and to establish himself in business there, and that a good result might be expected. But no such letter appears in evidence; and, even if it were assumed that a letter to such effect was written, no proof was given that it was received, or even that it was properly mailed. Upon his cross-examination the defendant distinctly admitted that he had no knowledge whatever that Gerhard Schipper had received the letter, and that all he knew was that Gerhard Schipper paid the draft. No other evidence having been adduced upon this point, the position taken by the defendant at the trial, therefore, involves a defense which was neither pleaded nor sustained by competent proof. Moreover, the defendant, in the course of his cross-examination, was forced to admit, and finally did admit,—and the testimony of Frederick Huhn, who at the time of the transaction was defendant's confidential clerk, was to the same effect,—that the true reason of defendant's refusal to pay was that the defendant thereby intended to prevent John F. Schipper from establishing himself in business in New York, in competition with defendant's business.

The case, as presented, is therefore to be governed by the principles which usually apply between principal and agent. The agent collected the money for his principal without incurring any responsibility except to pay it over to his principal according to the terms of his employment; and, having refused to do so, he is liable. No representation by the agent having been made to Gerhard Schipper as an inducement to the payment of the draft, and no condition having been annexed by Gerhard Schipper to the payment, the money became the property of John F. Schipper; and it constitutes, under the circumstances of the case, no defense to the defendant that, subsequent to his refusal, he procured Gerhard Schipper to instruct him to pay the money to a banking-house in New York for the account of said Gerhard Schipper, and that he (the defendant) did pay it pursuant to such instruction. It was therefore error to direct a verdict for the defendant; and for such error the judgment should be reversed and a new trial ordered, with costs to appellant, to abide the event. All concur.